IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TEXAS CHRISTIAN UNIVERSITY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:22-cv-402 |
| | § | |
| AMMA BOTA, STEPHANIE MORALES, | § | |
| and LAWRENCE WILDER, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

## **COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW TEXAS CHRISTIAN UNIVERSITY ("TCU"), Plaintiff, complaining of AMMA BOTA ("Bota"), STEPHANIE MORALES ("Morales"), and LAWRENCE WILDER ("Wilder"), Defendants, and for its Complaint and causes of action alleges as follows:

## **I. INTRODUCTION**

TCU is an educational institution. One of TCU's Professors, Dr. Deborah Rhea ("Rhea"), who is also the creator and director of the LiiNK Project, registered trademarks for "LiiNK"® and "LiiNK PROJECT *Let's Inspire Innovation 'N Kids*"® (Stylized), both of which were assigned to TCU. "LiiNK"® was a term which Rhea and TCU coined to describe a novel research program developed at TCU to bridge the gap between academics and the social, emotional, and healthy well-being of children. These marks have been widely used in Texas and other states. Subsequent to the registration of these TCU marks, Defendants began using "The LiiNK Project" as a mark, including particularly on their interactive website www.theliinkproject.com. This use of an identical or confusingly similar mark infringes TCU's registered trademarks and causes not only

a likelihood of confusion but instances of actual confusion. TCU has made demand on Defendants to cease and desist use of "The LiiNK Project", but those demands have been ignored and Defendants willfully continue to use the infringing mark. TCU therefore brings this action to enjoin further use of this identical or confusingly similar mark by Defendants and for other relief.

## II. JURISDICTION AND VENUE

1. This is an action for statutory trademark counterfeiting, trademark infringement, false designation of origin and/or unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*., and for common law unfair competition under Texas law.

2. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and pursuant to 28 U.S.C. §§ 1331 and 1338, because this action presents questions arising under the trademark laws of the United States to which Congress has granted exclusive subject matter jurisdiction to the federal courts. This Court has supplemental jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is a suit between citizens of different States and the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

3. This Court has personal jurisdiction over Defendants because TCU's claims arise, in significant part, out of Defendants committing violations of statutes and tortious acts in Texas and this District via their interactive website which is accessible in Texas and this District, and/or because their violations and tortious acts are directed towards TCU in Texas and this District and causing harm to TCU in Texas and this District.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because it is where a substantial part of the events giving rise to the claims occurred, via the direction of Defendants' interactive website with its infringing trademark to residents of this District and the

harm suffered by TCU being in this District; and/or because it is where a substantial part of the intellectual property that is the subject of this action is situated, in that TCU, the owner of that intellectual property, is located, operating, making use of, and maintaining its intellectual property that is the subject of this action here.

## III. PARTIES

5. TCU is a non-profit corporation formed under the laws of the State of Texas, having its principal place of business located in Fort Worth, Texas.

6. On information and belief, Bota is an individual citizen and resident of Seattle, Washington, and may be served at her place of business, which on information and belief is at 4311 Martin Luther King Jr. S, Seattle, WA 98108.

7. On information and belief, Morales is an individual citizen and resident of Seattle, Washington, and may be served at her place of business, which on information and belief is at 4311 Martin Luther King Jr. S, Seattle, WA 98108.

8. On information and belief, Wilder is an individual citizen and resident of Seattle, Washington, and may be served at his place of business, which on information and belief is at 4311 Martin Luther King Jr. S, Seattle, WA 98108.

9. Upon information and belief, Defendants Bota, Morales and Wilder are the founders of and are doing business as The LiiNK Project in Seattle, Washington.

## IV. SUBSTANTIVE ALLEGATIONS

10. TCU is a topflight university and graduate educational institution. Rhea is a TCU professor and founding director of the LiiNK Project® at TCU. The LiiNK® acronym stands for "Let's Inspire Innovation 'N Kids" and is a term which Rhea and TCU coined to describe a novel research program developed at TCU to bridge the gap between academics and the social,

emotional, and healthy well-being of children. The LiiNK Project® or LiiNK® aims to develop the whole child through increased recess and character development. From its beginning in 2014, the program has grown to be implemented in numerous school districts in Texas and Oklahoma with expansion to Michigan and Florida in 2021. The LiiNK Project® has also been the subject of numerous presentations regionally, nationally, and internationally by Rhea and her TCU colleagues and the subject of a book by Rhea, as well as being the subject of academic papers, poster presentations and talks to interested groups. This program has been highlighted in other authors' books over the years with international audiences; *e.g.*, *Let the children play: How more play*...Sahlberg & Doyle (2019), and also on The Today Show, NPR, Education Week, TED Talks, and in the Washington Post.

11. TCU has invested substantial amounts of time, money, and effort in developing brand recognition for the LiiNK Project®. This includes obtaining two federal trademark registrations: Registration No. 5,122,988 ('988 Reg.), a copy of which is attached hereto as **Exhibit 1**, and Registration No. 5,127,536 ('536 Reg.), a copy of which is attached hereto as **Exhibit 2**. The '988 Reg. was issued by the United States Patent and Trademark Office on January 17, 2017, and the '535 Reg. was issued on January 24, 2017. The '988 Reg. shows a first use date of 9-9-2014 and a first use in commerce date of 9-9-2014. The '536 Reg. also shows a first use date of 9-9-2014 and a first use in commerce date of 9-9-2014. Both of the Marks were issued to Rhea and were subsequently assigned to TCU, along with all appertaining goodwill. The '988 Reg. is for the block letters mark: "LiiNK". The '535 Reg. is a stylized mark, pictured below:

LiiNK PROJECT

Let's Inspire Innovation 'N Kids

The registered marks are valid and subsisting and incontestable. Collectively, the two registered marks are referred to as the "TCU Marks" and the trademarks and registrations collectively as the "TCU IP". TCU has substantial associated goodwill and name recognition in the TCU Marks and TCU IP. TCU has been actively promoting use of the TCU IP and particularly the term/mark "LiiNK"® since its first use in 2014.

12. TCU uses the website www.liinkproject.tcu.edu in connection with its use of the TCU IP and the LiiNK Project®'s programs. Attached hereto as **Exhibit 3** are selected screenshots of that website.

13. In 2021, TCU became aware of Defendants' use of the term "The LiiNK Project" in relation to their website and also in various social media venues. The Defendants' interactive website is www.thelinkproject.com. Copies of Defendants' downloaded website screenshots are attached as **Exhibit 4**. Through this interactive website, numerous clothing items can be purchased directly by the user from Defendants. Further, Defendants solicit donations from its website users which can be accomplished via Defendants' website.

14. Because of the identical nature of the two names and the identical fanciful spelling, the Defendants have counterfeited the TCU Marks, and committed trademark infringement, false designation of origin, and unfair competition.

15. The Defendants' use of their counterfeit and infringing mark has caused actual confusion in the marketplace. For example, TCU has received shared posts to its social media sites from Defendants' organization and, in all likelihood, Defendants' organization is likewise getting some confused posts from TCU's groups. There have been many different social media tags to the wrong website and sharing of information that is unrelated to what TCU's program is designed to do. In one instance, one of TCU's best followers shared information from Defendants' group because she thought TCU was messaging about support for businesses of color. It is believed that this information came from the NAACP, which shared TCU's www.liinkproject.tcu.edu website instead of Defendants' www.theliinkproject.com website, with other business owners following suit. The NAACP took its "share" down after realizing they had shared the wrong internet address. However, that creates confusion where individuals are following a certain group and it then looks as if TCU's LiiNK Project® is shifting its mission; particularly in this case, promoting start-up black enterprises and coordinating like-minded interests. While TCU acknowledges the Defendants' mission is important, it is not the mission of TCU's aforementioned project marketed via the TCU IP. See **Exhibit 5** attached hereto as evidence of confusion.

16. As a result of this, TCU, through Rhea, sent a cease and desist letter to Defendants on July 15, 2021 via email, which set out the foregoing facts. No response was ever received. Thereafter, counsel for TCU sent another letter, via Federal Express and certified mail, return receipt requested, on December 13, 2021, which latter letter enclosed a copy of Rhea's letter. Counsel's letter with the enclosed letter of Rhea is attached as **Exhibit 6**. The certified mail

delivery was returned unclaimed, but the Federal Express delivery was delivered. As before, no response was received by counsel to his letter. Due to this total disregard and lack of cooperation by Defendants, and in light of both strong likelihood of confusion and actual confusion, and to protect and police the TCU IP, it has now proven necessary to bring this suit against Defendants.

**COUNT 1**

***Federal Trademark Counterfeiting – 15 U.S.C. § 1114***

17. TCU hereby re-alleges and incorporates by reference the allegations set forth above in Paragraphs 9-16.

18. TCU has never granted Defendants the authorization to use the TCU Marks. Defendants have nevertheless used a designation which is identical or substantially indistinguishable from the TCU Marks—even to the extent of using the exact same stylized "misspelled" two lowercase "i's" of the coined fanciful TCU Marks in "LiiNK".

19. Defendants have intentionally used this counterfeit designation, knowing it is counterfeit, if not initially (which is likely even from the outset, given the identical arbitrary stylized "misspelling"), then certainly from and after their receipt of Rhea's letter.

20. Defendants' use of the TCU Marks to advertise, promote, offer for sale, and sell products (such as clothing items as shown on their infringing website) and services was at all times and is currently without TCU's authorization, license, or consent.

21. Defendants' unauthorized use of the TCU Marks in connection with Defendants' advertisement, promotion, sale, offering for sale, and distribution of products and services constitute a use of the TCU Marks in commerce.

22. Defendants' unauthorized use of the TCU Marks is likely to: (a) cause confusion, mistake and deception; (b) cause the public to believe that the Defendants' products and services

are authorized by, sponsored by, or approved by TCU, or that Defendants are affiliated with, connected to, associated with, or in some way related to TCU; (c) result in Defendants unfairly benefitting from TCU's advertising and promotion of the TCU IP; and (d) result in Defendants unfairly profiting from TCU's reputation and trademarks, all to the substantial and irreparable harm of the public, TCU, the TCU IP, the TCU Marks, and the substantial goodwill that they represent.

23. Defendants' acts constitute willful trademark counterfeiting in violation of Section 32 of the Trademark Act, 15 U.S.C. § 1114, making this an exceptional case.

24. By reason of the foregoing, Defendants are liable to TCU for statutory damages in the amount of up to $2 million for each mark counterfeited as provided in 15 U.S.C. § 1117(c) of the Lanham Act; or, at TCU's election, an amount representing three times the amount of TCU's damages or Defendants' profits, whichever is greater, and reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117(b).

25. TCU is also entitled during the pendency of this action to preliminary injunctive relief against Defendants, as well as permanent injunctive relief, and further relief permitting the seizure of the "goods and counterfeit marks . . . and the means of making such [counterfeit] marks, and records documenting the manufacturer, sale, or receipt of things involved in such [counterfeiting] violation" pursuant to 15 U.S.C. § 1116(d)(1)(A).

## COUNT 2

***Federal Trademark Infringement – 15 U.S.C. § 1114***

26. TCU hereby re-alleges and incorporates by reference the allegations set forth above in Paragraphs 9-16.

27. Without TCU's authorization, license, or consent, Defendants have knowingly used

and continue to use in commerce the TCU Marks in connection with the manufacturing, advertising, promoting, and selling products and services in the United States. Defendants have used the TCU Marks with the knowledge of and the intent to call them to mind and create a likelihood of confusion with regard thereto and/or to trade off of TCU's fame and its registered TCU Marks.

28. Defendants' use of the TCU Marks is likely to: (a) confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship or affiliation of Defendants and TCU and/or Defendants' goods and services and TCU's goods and services; (b) is likely to cause such people to believe in error that the Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by TCU or that the Defendants' goods and services are in some way affiliated with TCU.

29. TCU has no control over Defendants' use of the TCU Marks and cannot control the fact that Defendants have used the TCU Marks to advertise, market, and sell their goods and services. Therefore, TCU's reputation and goodwill have been and continue to be damaged—and the value of the TCU Marks is jeopardized—by Defendants' continued use of the TCU Marks or colorable imitations thereof. Because of the likelihood of confusion, any defects, objections, or faults found with the Defendants' goods and services will negatively reflect upon and injure the exceptional reputation that TCU has established for the goods and services it offers in connection with the TCU Marks. As such, Defendants are liable to TCU for infringement of the TCU Marks pursuant to 15 U.S.C. § 1114.

30. Defendants' acts, if not preliminarily and permanently enjoined will cause irreparable harm to TCU's trademarks, scholastic and business reputation, and goodwill. TCU has no adequate remedy at law as monetary damages are inadequate to compensate TCU for the

ongoing injuries caused by Defendants to TCU's trademarks, scholastic and business reputation, and goodwill.

31. As a direct and proximate result of Defendants' conduct, TCU has suffered and continues to suffer damages to its valuable TCU Marks and other damages in an amount to be proven at trial, for which it seeks an award under 15 U.S.C. § 1117(a). Under the circumstances of this case, TCU seeks augmentation of the damages up to three times their amount.

32. Defendants, on information and belief, are obtaining profits from the goods and services they are selling, for which TCU seeks recovery under 15 U.S.C. § 1117(a). However, TCU submits this will be inadequate under the circumstances of this case and asks the Court to, in the exercise of its discretion, enter such sum as the Court shall find to be just.

33. Defendants' infringement of TCU's Marks is deliberate, willful, fraudulent, in the face of clear notice, and without any extenuating circumstances, and constitutes a knowing use of TCU's Marks, so this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

34. Therefore, TCU is entitled to preliminary and permanent injunctive relief as well as an award of Defendants' profits, TCU's actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117(a).

## COUNT 3

***Federal False Designation of Origin/Unfair Competition – 15 U.S.C. § 1125***

35. TCU hereby re-alleges and incorporates by reference the allegations set forth above in Paragraphs 9-16.

36. Defendants' use, promotion, offers to sell, and sale of their goods and services with an identical or imitating mark to the TCU Marks violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The TCU Marks are federally registered and entitled to protection under both

federal and common law. The TCU Marks are fanciful or arbitrary, using a coined term. Moreover and/or alternatively, TCU has extensively and continuously promoted and used the TCU Marks for many years in the United States and worldwide. Through that extensive and continuous use, the TCU Marks have become well-known indicators of the origin and quality of TCU's novel research program to bridge the gap between academics and the social, emotional, and healthy well-being of children and have "acquired distinctiveness," that is, secondary meaning, in the marketplace.

37. Defendants' use of an identical or colorable imitation of TCU's Marks constitutes false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the goods and services of Defendants by creating the false, misleading impression that they are authorized by or otherwise associated with TCU.

38. Defendants' use of identical or colorable imitations of the TCU Marks have caused, and unless enjoined will continue to cause, substantial and irreparable injury to TCU for which TCU has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation and/or quality associated with the TCU Marks.

39. Defendants' use of identical or colorable imitations of the TCU Marks has been intentional and willful. Defendants' bad faith is evidenced by use of a mark identical to the TCU Marks, even after being put on notice of TCU's Marks and being twice requested to cease and desist, which requests were simply ignored. TCU is entitled to injunctive relief, and TCU is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117(a).

**COUNT 4**

***Common Law Unfair Competition***

40. TCU hereby re-alleges and incorporates by reference the allegations set forth above in Paragraphs 9-16.

41. TCU was the first to use TCU's Marks. As a result of TCU's widespread and continuous use in commerce, including its promotion and sales of goods and services bearing the TCU Marks, the TCU Marks have become widely known. TCU has been identified by the public as the manufacturer of the goods and services in conjunction with which the TCU Marks are used.

42. As a result of the experience, care, and service of TCU in producing the goods and services in conjunction with which the TCU Marks are used, these goods and services have become widely known and acquired a national reputation for quality. Moreover, the TCU Marks have come to symbolize TCU's reputation for quality and excellence. Further or alternatively, the TCU Marks have also acquired secondary meaning (*i.e.*, acquired distinctiveness).

43. Defendants, with knowledge of and with intentional disregard of TCU's rights, continue to advertise, promote, and sell products and services under the TCU Marks or colorable and confusing imitations thereof. Defendants' acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of TCU's goods and services, causing actual damages to TCU.

44. Defendants' acts alleged herein have caused, and if not enjoined will continue to cause, irreparable and continuing harm to TCUs trademarks, business reputation, and goodwill. TCU has no adequate remedy at law because monetary damages are inadequate to compensate TCU for the injuries caused by Defendants to TCU's trademarks, business, reputation, and goodwill. TCU is therefore entitled to preliminary and permanent injunctive relief barring

Defendants' use of the TCU Marks or any colorable imitation thereof, including specifically the use of "LiiNK"® or any colorable imitation of same.

45. Defendants' actions are fraudulent, with malice, and/or are grossly negligent as defined by Texas statutory law governing the award of exemplary damages. Therefore, in addition to actual damages, TCU asks for an award of exemplary damages.

## GENERAL PRAYER FOR RELIEF

**WHEREFORE**, TCU respectfully prays for:

A. Judgment that Defendants have (i) willfully engaged in trademark counterfeiting in violation of 15 USC § 1114; (ii) willfully infringed the TCU Marks in violation of 15 USC § 1114; (iii) willfully used false designations of origin and/or engaged in unfair competition in violation of 15 U.S.C. § 1125(a); and (iv) committed unfair competition under Texas common law.

B. Preliminary injunctive relief during the pendency of this case and a permanent injunction against further counterfeiting, infringement, false designation of origin, and unfair competition of TCU's Marks by Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation therewith;

C. At TCU's election, either (1) an award of damages adequate to compensate TCU for the intentional acts of trademark counterfeiting that have occurred pursuant to 15 U.S.C. § 1117(b), which amount shall include three times the amount of Defendants' profits or TCU's damages (whichever is greater), together with reasonable attorneys' fees; or (2) statutory damages in the amount of: (i) not less than $1,000 and no more than $200,000 per counterfeit mark per type of goods and services sold, offered for sale, or distributed, as the Court considers just; or (ii) if the Court finds the use of the counterfeit mark was willful, not more than $2 million per counterfeit mark per type of goods and services sold, offered for sale or distributed, as the Court considers

just;

D. An award of damages adequate to compensate TCU for the trademark infringement, false designation of origin, or unfair competition under the Lanham Act pursuant to 15 U.S.C. § 1117(a), which amount shall include Defendants' profits and TCU's damages, as enhanced according to the circumstances of the case, and the costs of this action;

E. Actual damages under Texas common law and Texas statutory exemplary damages;

F. A finding that this is an exceptional case in accordance with 15 U.S.C. §1117(a) and an award to TCU as the prevailing party of its reasonable attorneys' fees; and/or

G. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiff TCU respectfully demands a trial by jury on all issues so triable by jury.

Respectfully submitted,

/s/ Richard L. Schwartz
Richard L. Schwartz
Texas Bar No. 17869500

Thomas F. Harkins, Jr.
Texas Bar No. 09000990

**WHITAKER CHALK SWINDLE & SCHWARTZ PLLC**

301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0500
Facsimile: (817) 878-0501
rschwartz@whitakerchalk.com
tharkins@whitakerchalk.com

**ATTORNEYS FOR PLAINTIFF TEXAS CHRISTIAN UNIVERSITY**